JOURNAL ENTRY AND OPINION
{¶ 1} This is an administrative appeal from the Ohio Unemployment Compensation Review Commission (the "Commission") pursuant to R.C.4141.282.[1] Julie M. Bethlenfalvy appeals from the judgment of the common pleas court affirming the decision of the Commission to deny her unemployment benefits. For the reasons set forth below, we reverse the judgment of the trial court.
 {¶ 2} Between October 2000 and September 2002, claimant was employed by Ohio Farmers Insurance Co., Inc., as a commercial insurance underwriter. In that position, claimant's salary was approximately $30,000 per year. In approximately $30,000 per year. In April 2002, claimant decided to supplement her income by accepting part-time employment with The Limited Stores, a position that could entail up to fifteen hours per week.
 {¶ 3} On or about September 6, 2002, because of a decline in sales, Ohio Farmers terminated claimant's employment. Claimant applied for and was granted unemployment benefits. The amount of those benefits was set off by her part-time employment with The Limited.
 {¶ 4} By early November, 2002, sales had declined at The Limited and claimant's ususal fifteen-hour work week was reduced to five to six hours per week. The store would often call her off on days when she was scheduled to work. Unable to obtain any assurance of an increase in hours, claimant decided that her employment with The Limited was economically unfeasible given the time of her commute[2] and the reduction in hours. Following a two-week notice, claimant left The Limited.
 {¶ 5} Claimant applied for additional unemployment benefits from The Limited. In December 2002, the Director of the Ohio Department of Job and Family Services ("Director") determined that claimant voluntarily quit her employment at The Limited without just cause. Not only was claimant's application for unemployment benefits from The Limited denied, her unemployment benefits based on her days off from Farmers Insurance were on her days off from Farmers Insurance were also completely terminated.[3] Claimant's subsequent application for reinstatement of benefits was denied. She appealed that decision and the Director transferred the appeal to the Commission for a hearing.
 {¶ 6} The Commission affirmed the decision to deny claimant all unemployment benefits. Claimant sought but was denied review of that decision. Claimant appealed to the trial court, which affirmed the Commission's decision to deny her all unemployment benefits. Claimant now appeals and presents two assignments of error:
I. The common pleas court erred in affirming the ohio unemployment compensation review commission's decision that appellant quit work without just cause where that decision was unlawful, unreasonable or against the manifest weight of the evidence.
 {¶ 7} Claimant argues that when she left her employment at The Limited she had just cause to do so and is, therefore, entitled not only to unemployment benefits from The Limited, but is also entitled to reinstatement of her unemployment benefits from Farmers Insurance.
 {¶ 8} On appeal, this court "may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence." Tzangas, Plakas Mannos v. Administrator, Ohio Bureau ofAdministrator, Ohio Bureau of Employment Servs., 73 Ohio St.3d 694, 697,1995-Ohio-206, 653 N.E.2d 1207. An appellate court cannot make factual findings or determine the credibility of witnesses. "The court may only modify the Board's decision where the facts are not in dispute and such undisputed facts are determinative of the issues." Vitale v.Administrator (Oct. 30, 1986), Cuyahoga App. No. 51207, 1986 Ohio App. LEXIS 8880, at *4.
 {¶ 9} If some evidence supports the commission's decision, the reviewing court, whether a common pleas court or court of appeals, must affirm. * * * Where the board might reasonably decide either way, reviewing courts must leave the board's decision undisturbed.
 {¶ 10} Harrison v. Penn Traffic Co., Franklin County App. No. 04AP-728, 2005-Ohio-638, at ¶ 6.
 {¶ 11} In Ohio, to be eligible for unemployment compensation benefits, claimants must satisfy the criteria established pursuant to R.C. 4141.29(D)(2)(a), which provides in part as follows:
(D) * * * [No] individual may * * * be paid benefits * * *:
* * *
(2) For the duration of his unemployment if the administrator finds that:
(a) He quit his work without just cause or has been discharged for just cause in connection with his work * * *.
 {¶ 12} Pursuant to R.C. 4141.29(D)(2)(a), a claimant is ineligible for unemployment benefits if she quits a job without "just cause."
 {¶ 13} The phrase "just cause" is not defined in the statute; therefore, whether an employee had just cause to leave employment is a factual question determined on a case-by-case basis. Tzangas, supra, citing Irvine v. Unemp. Comp. Bd. of Review (1985), 19 Ohio St.3d 15, 17,482 N.E.2d 587. The Ohio Supreme Court has, however, provided some limited guidance by defining "just cause" as "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." Id., at 697, citing Irvine.
 {¶ 14} In the case at bar, the Commission's Hearing Officer concluded that "although Claimant was only working five or six hours a week when she made the decision [to leave The Limited], she still could have sought full-time work and collect partial unemployment benefits. Claimant chose not to do this."[4] Hearing Officer's Decision, p. 2.
 {¶ 15} On this record, it is evident that the Commission assigned fault to claimant for refusing to work the five to six hours per week available to her at the Limited. In this appeal, the Commission stands by that determination and in doing so characterizes claimant's decision to leave The Limited as a voluntary quit without just cause.
 {¶ 16} The Commission, on the other hand, describes claimant's decision to quit her employment as analogous to the situation described in Shaffer-Goggin v. State of Ohio Unemployment Compensation ReviewCommission, et al., Richland App. No. 03-CA-2, 2003-Ohio-6907. InShaffer-Goggin, claimant worked for a floral shop. When her son became ill, claimant frequently missed work. Because claimant's absences did not abate, the employer reduced claimant's hours and hired another floral designer. Claimant quit. Her subsequent application for unemployment benefits was denied. The Ohio Unemployment Compensation Review Commission determined that claimant quit because her hours were reduced. It further determined that "[t]here has been no showing that claimant had a contractual right to a certain number of hours per week. * * * Claimant had other options besides quitting. She could have worked the assigned hours while seeking other employment. She could have worked the hours made available to her, and if she earned less than her weekly benefit amount, filed a claim for partial unemployment compensation benefits." Id., at ¶ 21.
 {¶ 17} Both the trial court and then the appellate court inShaffer-Goggin affirmed the commission's denial of unemployment benefits. Both courts agreed with the commission that claimant had quit her employment without just cause.
 {¶ 18} In the case at bar, the Commission argues that claimant, like the claimant in Shaffer-Goggin, quit The Limited "without just cause as she could have worked the part time hours while searching for full time work." for full time work." Commission's Brief at 6. We do not findShaffer-Goggin persuasive authority to apply here.
 {¶ 19} Whether an employer's reduction in hours is substantial enough to provide the employee with just cause to quit her job is a factual determination. Bainbridge Township v. Stellato, (Mar. 8, 1996), Geauga App. No. 95-G-1936;
 {¶ 20} In Shaffer-Goggin, there is no mention of whether claimant had full-time employment, how much claimant's hours were reduced, or how far claimant traveled to work. Moreover, the claimant never argued that her reduction in hours constituted an involuntary termination by the employer. This, argument, however, is precisely what claimant presented in the case at bar. Shaffer-Goggin is, therefore, factually and legally distinguishable.
 {¶ 21} Some Ohio courts have determined that employees have just cause in leaving employment when their hours/wages have been substantially reduced. In Bainbridge Township v. Stellato, (Mar. 8, 1996), Geauga App. No. 95-G-1936, the claimant's hours, and resultant pay, were decreased by 66 percent. The reduction in hours was not related to any fault by claimant. The court concluded that the reduction in claimant's hours was substantial and amounted to a constructive discharge and therefore granted claimant unemployment benefits.
 {¶ 22} In the case at bar, claimant claims that her employment at The Limited created a substantial economic hardship for her. She argues that when her hours were reduced by more than 66 percent she was, in effect, she was, in effect, involuntarily terminated. Claimant was paid $7.50 an hour at The Limited. For a work week of five to six hours, her gross pay was $37.50-$45.00 a week. And she had the expense of driving thirty minutes one way each time she worked.[5]
 {¶ 23} Further, claimant points to additional reasons for leaving The Limited beyond the reduction in her hours. Claimant pointed to the expense of the thirty-minute travel one way, The Limited's inability to say when or if she would ever return to her usual fifteen-hour work week,[6] and The Limited's frequent and unpredictable decisions to call her off when business was slow. She explained that these unpredictable calls limited her attempts to seek full-time work. She said, "Because I was effectively to seek full-time work. She said, "Because I was effectively `on call' I could not schedule other appointments even though I was not being paid."
 {¶ 24} Applying the case of Stellato to this record, we conclude that the evidence supports the determination that a reasonable person would have justifiably quit her job under the same conditions. Accordingly, the Commission's determination denying employment compensation benefits was against the manifest weight of the evidence. Claimant's first assignment of error is sustained.
II. The common pleas court erred in not applying R.C.4141.29(D)(2)(A)(iii).
 {¶ 25} Claimant argues that before determining that she was not entitled to unemployment benefits, the court should have applied R.C.4141.29(D)(2)(A)(iii). The statute describes an exception to a denial of benefits for an employee who quits formerly concurrent employment.
 {¶ 26} The exception occurs under the following circumstances:
(iii) The individual has left employment to accept a recall from a prior employer or, except as provided in division (D)(2)(a)(iv) of this section, to accept other employment as provided under section 4141.291
[4141.29.1] of the Revised Code, or left or was separated from employmentthat was concurrent employment at the time of the most recent separationor within six weeks prior to the most recent separation where theremuneration, hours, or other conditions of such concurrent employmentwere substantially less favorable than the individual's most recentemployment and where such employment, if offered as new work, would beconsidered not suitable under the provisions of divisions (E) and (F) ofthis section. Any benefits that would otherwise be chargeable to the account of the employer from whom an individual has left employment or was separated from employment that was employment or was separated from employment that was concurrent employment under conditions described in division (D)(2)(a) (iii) of this section, shall instead be charged to the mutualized account created by division (B) of section 4141.25 of the Revised Code, except that any benefits chargeable to the account of a reimbursing employer under division (D)(2)(a)(iii) of this section shall be charged to the account of the reimbursing employer and not to the mutualized account, except as provided in division (D)(2) of section4141.24 of the Revised Code. (Emphasis added.)
 {¶ 27} The statute imposes a specific time restriction for eligibility under this exception. To be eligible for benefits, a claimant must leave her most recent employment within six weeks after leaving her former concurrent employment.
 {¶ 28} In the case at bar, claimant left Farmers on September 6, 2002. She left The Limited on November 17, 2002. Because the time between September 6th and November 17th exceeds the six weeks specified in the statute, claimant does not qualify for benefits under R.C.4141.29(D)(2)(A)(iii).
 {¶ 29} Since claimant does not meet the threshold qualifications under the statute, we need not reach the issue of whether the trial court erred by not determining whether she met the remaining qualifications under this exception. Claimant's second assignment of error is overruled.
 {¶ 30} For all the preceding reasons we reverse the judgment of the trial court and remand this matter to the trial court to order the Board to determine specifically the amount of claimant's unemployment benefits based unemployment benefits based on her employment at Farmers and additional benefits based on her employment at The Limited and then to issue payment.
Judgment accordingly.
This cause is reversed and remanded.
It is, therefore, ordered that appellant recover of appellee her costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., J., concurs.
 Dyke, P.J., concurs in judgment only.
[1] R.C. 4141.282, provides, in part, as follows:
(A) THIRTY-DAY DEADLINE FOR APPEAL
Any interested party, within thirty days after written notice of the final decision of the unemployment compensation review commission was sent to all interested parties, may appeal the decision of the commission to the court of common pleas.
[2] Claimant's one-way commute to The Limited took approximately thirty minutes.
[3] She had been receiving unemployment compensation that was set off by her wages from The Limited.
[4] It is not clear what "this" refers to. The record demonstrates that claimant continued to seek full-time work and hoped to continue to collect unemployment benefits as a result of her unemployment with Ohio Farmers. Claimant was not aware her partial unemployment benefits might cease. Her decision was to leave The Limited because at that time it was offering her only five to six hours of work.
[5] The record never clarifies, moreover, whether her five to six hours a week were performed on one day or on two or more days. The need to travel more than one day a week would disproportionally increase her weekly travel expenses.
[6] In a letter to the Bureau, dated January 14, 2003, Claimant states "salespersons were required to dress in clothing sold at The Limited * * *." She explained that originally, the discounted purchase of clothes was a benefit that aided her primary job as an underwriter. However, she added, with the loss of that primary job, this requirement became an added expense, especially because of the approaching seasonal change in clothes.
Asked whether there was a clothing requirement, the store stated: "You need to dress in the current fashion or all black." The store explained that it gave discounts to encourage employees to wear its clothes. Claimant was never recalled to determine whether she was aware of this alternative. In a final attempt to clarify this matter, the Hearing Officer asked: "There's no requisite that she had to purchase"? The transcript indicates, however, that the store's response was "inaudible." Whether claimant was required, expected, or merely encouraged to seasonally purchase clothing to advertise her employer's merchandise was left unresolved.